Argued and submitted February 11, affirmed December 24, 2008, petition for review denied April 8, 2009 (346 Or 157)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## AARON TAYMON GEE,
*Defendant-Appellant.*

Multnomah County Circuit Court
041035831; A129919

198 P3d 950

Daniel J. Casey argued the cause and filed the brief for appellant.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy

Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Defendant appeals, after a jury trial, from a judgment of conviction for two counts of attempted murder, ORS 163.115(1)(a), ORS 161.405(1), one count of assault in the first degree, ORS 163.185(1)(a), and one count of assault in the second degree, ORS 163.175(10)(b). He assigns error to the trial court's denial of his motion *in limine* to exclude evidence concerning gang membership, to the trial court's denial of his motion for a judgment of acquittal based on a lack of evidence corroborating the testimony of two accomplices, and to the imposition of consecutive sentences on the two counts of attempted murder. We address only defendant's third contention and affirm.

We summarize the facts underlying the convictions. The evidence consisted primarily of the testimony of codefendants Benson and Williams. Defendant and the two codefendants were members of the Lincoln Park Bloods gang. Benson and Williams had a quarrel with Taylor, who was a member of a rival gang. There was a history of animosity between defendant and Taylor as well. The next night, all three defendants, in a vehicle driven by Williams, were searching for Taylor, when they came upon two persons walking. Defendant recognized one of the persons as Taylor and encouraged Benson to shoot him. Benson fired four shots, hitting one of the pedestrians, and Williams drove away. In fact, the person whom Benson shot was not Taylor, but White. Taylor was several blocks away at the time of the shooting.

Defendant and the codefendants were charged with attempted murder of both Taylor and White and with three counts of assault against White. Benson and Williams pleaded guilty to multiple offenses in exchange for an agreement to testify at trial. Defendant was charged as both a principal and an aider and abettor and, based on the testimony of his codefendants, convicted of both counts of attempted murder and two of the assault charges.

The issue that we address on appeal concerns defendant's consecutive 90-month Measure 11 sentence on Count two. Count one of the indictment charged defendant with attempting to murder the injured victim, White; Count two

charged defendant with attempting to murder the intended victim, Taylor. The court imposed a sentence of 90 months on Count one and then imposed a 90-month sentence on Count two, to be served consecutively to Count one. The trial court said:

"The Court can only look at the jury's verdict as to whether there was sufficient evidence to meet the state's burden of proof that you attempted to murder Ricky Taylor, as well, through an aid-and-abet theory, and based on that, the Court does find that there is a basis for [a] consecutive sentence."

On appeal, defendant asserts that the court erred in imposing consecutive sentences, because the two attempted murder charges arose out of a continuous and uninterrupted course of conduct, and none of the bases stated in ORS 137.123(5)(b) for imposing consecutive sentences applies. ORS 137.123 provides, in part:

"(4) When a defendant has been found guilty of more than one criminal offense arising out of a continuous and uninterrupted course of conduct, the sentences imposed for each resulting conviction shall be concurrent unless the court complies with the procedures set forth in subsection (5) of this section.

"(5) The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"* * * * *

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

Defendant asserts that the trial court erred in assuming that consecutive sentences were authorized merely because of the existence of two victims. Defendant contends that the offense on which the consecutive sentence was imposed (the attempted murder of Taylor) did not cause a

risk of loss to a different victim than the first offense (the attempted murder of White) because the act of shooting created no risk of harm to Taylor, who was several blocks away at the time of the shooting. Because Taylor was not in the line of fire, defendant contends, the offense against Taylor did not give rise to separate victims or a separate risk of harm than the offense against White, and the two counts therefore could not support consecutive sentences.

The state counters that defendant views the case "through the wrong end of the telescope." Defendant set out to murder Taylor, the state asserts, and in the course of that effort, he shot and injured White. Thus, the state contends, in his attempt to murder Taylor, defendant put another victim, White, at risk. In any event, the state asserts, defendant's shooting of White also put another person, White's companion, at risk and, for that reason alone, the state contends, the consecutive sentence was authorized.

■ We conclude that the court did not err in ordering the sentence on Count two to be served consecutively to Count one. Count two of the indictment charged that defendant "unlawfully and intentionally attempt[ed] to cause the death of Ricky Taylor." ORS 161.405(1) provides that "[a] person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." An action is done "intentionally" when "a person acts with a conscious objective to cause the result or engage in the conduct so described." ORS 161.085(7). ORS 163.115(1)(a) defines "murder" to include an intentional act of criminal homicide. "Criminal homicide," in turn, is defined by ORS 163.005(1) to include "intentionally * * * caus[ing] the death of another human being." Thus, defendant's conviction for the attempted murder of Taylor established that he consciously took a substantial step toward intentionally causing Taylor's death.

The issue under ORS 137.123(5)(b), then, is whether the commission of that offense "caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened" by the attempted murder of White. The answer is plain. It is not necessary that the commission

of attempted murder cause actual harm to Taylor. It is sufficient under ORS 137.123(5)(b) that the offense create "a risk of * * * harm." Any substantial step toward causing Taylor's death created a risk of causing him harm.[1] That step necessarily made it more likely that Taylor would be harmed than if the step were not taken. That risk of particular harm to Taylor was a different risk than the one created by the attempted murder of White. Defendant's conviction for the attempted murder of Taylor supplied the necessary predicate for the application of ORS 137.123(5)(b) and the imposition of consecutive sentences.

Our conclusion that an act committed in a "continuous and uninterrupted course of conduct" can create different risks to different victims is consistent with the analysis in *State v. Rettmann*, 218 Or App 179, 178 P3d 333 (2008). We concluded in *Rettmann* that two offenses, attempted aggravated murder and assault, could not be sentenced consecutively when they were committed by a single act against a single victim. The issue in *Rettmann* under ORS 137.123(5)(b) involved different statutory text than the statutory wording relevant to this case—whether the attempted aggravated murder "caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim" than the assault offense. We determined that a single act against a victim created only one set of risks:

> "Where two offenses are predicated on the same act, logic will not support the conclusion that one offense caused or created a risk of causing some harm that the other offense did not. It follows that, if an act that is motivated by an intent to kill creates a risk of causing a particular harm, the same act cannot be said to create a risk of causing a different harm merely because the act can also be viewed as constituting an assault."

*Id.* at 186. The inquiry under the "different victims" portion of ORS 137.123(5)(b) does not involve determining whether the type of harm from one offense is "greater or qualitatively

---

[1] ORS 131.007 defines "victim" for purposes of ORS chapter 137 and other listed laws to mean "the person or persons who have suffered financial, social, psychological or physical harm as a result of a crime * * *." The "risk of * * * harm to a different victim" under ORS 137.123(5)(b) could include any risk of financial, social, psychological or physical harm.

different" than the harm created by the other offense. Instead, the comparison is whether one offense "caused or created a risk of causing loss, injury or harm to a different victim" than was caused by the other offense. The type of harm to the different victims could be the same. In this case, the conduct created a risk of harm to different victims.[2] The trial court did not err in imposing consecutive sentences.

■        Defendant also asks us for the first time on appeal to review as "plain error" the trial court's failure to submit to the jury the factual issues necessary to determine whether a consecutive sentence was appropriate, as required by the Sixth Amendment. *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), *cert granted,* ___ US ___ , 128 S Ct 1657 (2008). In this case, we conclude that there was no plain error because the jury's verdicts necessarily established the factual predicate of different risks of harm to different victims and thus authorized consecutive sentences under ORS 137.123(5)(b), without the need for any further factfinding. *State v. Hagberg*, 345 Or 161, 169-70, 190 P3d 1209 (2008) (facts implicit in a jury's verdicts can support the imposition of consecutive sentences under ORS 137.123); *see also* Or Const, Art I, § 44(1)(b) ("No law shall limit a court's authority to sentence a criminal defendant consecutively for crimes against different victims."). We accordingly decline defendant's invitation.

Affirmed.

---

[2] The conduct of assisting in the act of shooting, of course, created actual harm to White and a risk of harm to Taylor.