Submitted September 20, affirmed December 1, 2010, petition for review denied March 25, 2011 (350 Or 130)

# TRAVIS MICHAEL EASTER,
*Petitioner-Appellant,*

*v.*

# Don MILLS,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV081102; A141761

243 P3d 1212

Erin Galli and Chilton & Galli, LLC, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Katherine H. Waldo, Senior Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

Petitioner sought post-conviction relief from two convictions for first-degree sexual abuse, arguing that he received inadequate assistance of trial counsel because his attorney failed to preserve an objection that testimony by the mother of one of the child victims constituted an impermissible comment on the credibility of the child. The post-conviction court rejected petitioner's argument that the testimony in question was impermissible. On appeal, petitioner maintains that the post-conviction court erred in so concluding. For the reasons explained below, we affirm the post-conviction court's judgment.

We review the post-conviction court's judgment for errors of law and for evidence to support its findings. *Stroup v. Hill*, 196 Or App 565, 568, 103 P3d 1157 (2004), *rev den*, 338 Or 432 (2005). In order to obtain relief based on a claim of inadequate assistance of counsel, petitioner must demonstrate that his trial counsel did not exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result of counsel's inadequate performance. *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). Prejudice may be demonstrated by showing that counsel's acts or omissions had a tendency to affect the outcome of the prosecution. *Stevens v. State of Oregon*, 322 Or 101, 110, 902 P2d 1137 (1995).

In this case, the material facts pertaining to petitioner's inadequate assistance claim are not in dispute. In the underlying criminal proceeding, petitioner was charged with two counts of first-degree sexual abuse each against AH and TR, both of whom were friends of petitioner's daughter. Petitioner was convicted after a jury trial on all four counts. His theory of the case was that the children had fabricated stories of abuse because they were angry with his daughter, or angry with him because he would not let them play with his daughter. The issue raised in this post-conviction proceeding concerns only the two convictions relating to the victim AH. AH, who was 11 years old at the time of the criminal trial, testified that several years earlier, when she was visiting a recreational area with petitioner's family, petitioner had sexually abused her on two occasions. She acknowledged that she

had fought with petitioner's daughter and had been mad at petitioner, but she denied that she had made up the story because she was mad at petitioner or his daughter.

AH's mother testified that she was not present when AH disclosed the abuse to her father and stepmother, but learned of it when AH's stepmother telephoned her shortly thereafter. She then talked with AH, who described the incident. At trial, AH's mother testified as follows:

"Q. [Did AH] ever talk to you about any fights or arguments, animosity toward Mr. Easter [or his daughter, AE]?

"A. No. I know her and [AE] used to get in little fights about—because [AE] or her would want to play with a different friend or [AH] would like somebody and [AE] would be fighting with somebody or [AE] would like somebody and [AH] would be fighting with somebody. Just stuff like that, but nothing—

"Q. Do you know of any reason why your daughter would make this up?

"A. No.

"[DEFENSE COUNSEL]. Your honor, objection, speculation.

"THE COURT. Overruled."

The court then told the witness to go ahead, at which point she reiterated, "No, there's not," then added, "There's no reason."

After petitioner was convicted, he filed a direct appeal with this court, arguing in part that the trial court had erred in overruling his objection to AH's mother's testimony quoted above, because that testimony was an impermissible comment on the credibility of another witness. The state responded on direct appeal that the issue was unpreserved. This court affirmed defendant's convictions without opinion.

Petitioner sought post-conviction relief, arguing, as pertinent here, that counsel's failure to properly preserve an objection to AH's mother's testimony constituted inadequate assistance of counsel. He argued that this case is comparable to *State v. Vargas-Samado*, 223 Or App 15, 195 P3d 464

(2008), in which we held inadmissible testimony by a child's mother, in response to a question about whether the mother doubted whether the child's story "about what happened between her and the defendant was the truth," that, "I never doubted her for a second." *Id.* at 17. The state responded, and continues to assert on appeal, that neither the question asked of AH's mother nor the answer that was given ran afoul of the case law holding that one witness may not comment on the credibility of another.

■     The Oregon Supreme Court has recently reviewed and elaborated on its decisions on this subject. In *State v. Lupoli*, 348 Or 346, 357, 234 P3d 117 (2010), the court stated:

> "This court has long held that one witness may not give an opinion on whether he or she believes another witness is telling the truth. * * * Applying that principle is a straight-forward matter when one witness states directly that he or she believes another witness, or that the other witness is honest or truthful. However, statements that fall short of such overt vouching also may be impermissible."

The question in *Lupoli* concerned whether a medical professional, Avila, could testify as to a diagnosis of child sexual abuse, made in the absence of any physical evidence of abuse, where the diagnosis was based solely on a belief that the child victim was telling the truth when she described the abuse. The court concluded that Avila's testimony should not have been admitted:

> "Avila's testimony was inadmissible because it constituted vouching. To be sure, discrete portions of what Avila said might be admissible in many circumstances, and perhaps even in this case. For example, Avila's testimony that what SM said was developmentally appropriate for her age is the kind of expert opinion that can assist a jury and ordinarily would be admissible. So, too, might be testimony describing SM's demeanor and changes in demeanor, and the description of SM as having included spontaneous and descriptive details in her statements. The problem here, however, is that those otherwise permissible or potentially permissible portions of Avila's testimony were inextricably bound up with portions that constituted clear 'vouching.' *Avila's diagnosis, given the lack of physical evidence of abuse, necessarily was based on her assessment of the child's believability.*

When Avila then was asked the basis for her diagnosis, she was implicitly declaring, with each statement and description, why she had found SM to be credible. She did so explicitly as well, as when she explained that 'the manner in which [SM] told her story was pretty compelling' and that 'it had an effect' on her forming her diagnosis. Even if there were parts of Avila's testimony that might be admissible if offered in support of some other kind of diagnosis, or if offered to otherwise assist the jury, instead of to explain the expert's credibility-based opinion, here, none of Avila's testimony can be meaningfully separated from the context of which it was a part. We therefore conclude that the trial court erred in admitting the challenged testimony."

*Id.* at 362 (emphasis added; brackets in original). *Lupoli* is consistent with a venerable line of Supreme Court decisions anchored on the principle that "a witness, expert or otherwise, may not give an *opinion* on whether he believes a witness is telling the truth. We reject testimony from a witness about the credibility of another witness[.]" *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983) (emphasis added).

The question and answer at issue in the present case, however, may be distinguished in a significant way from those at issue in *Lupoli*. In the Supreme Court's major cases on this subject—*Lupoli, Middleton, State v. Southard*, 347 Or 127, 218 P3d 104 (2009), *State v. Keller*, 315 Or 273, 844 P2d 195 (1993), and *State v. Milbradt*, 305 Or 621, 756 P2d 620 (1988)—the challenged testimony was by various expert witnesses who professed the ability to determine whether an alleged crime victim was telling the truth about the crime, based on demeanor, spontaneity, consistency, amount of detail, and various other factors. In short, the problem in those cases was the admission of "credibility-based opinion" testimony. *Lupoli*, 348 Or at 362. The question at issue here, and the answer it elicited, were not of the same sort found to be objectionable in those cases. Here, AH's mother was not asked whether she believed that AH was telling the truth (nor did her answer reveal whether she believed that AH was telling the truth). Rather, she was asked if she knew of any motive AH would have to lie.

Admittedly, this line of questioning may skate close to the edge of what is permissible, given the real danger that

it might elicit a response that includes a comment on the credibility of a witness, even if the question does not specifically call for such a response. Here, however, the response did *not* contain the mother's opinion as to whether AH was telling the truth. Moreover, as the state notes, the defense theory of the case was that AH had a motive to lie about the abuse, because she was angry with petitioner and petitioner's daughter. In that circumstance, questions of AH's mother concerning whether she knew if her daughter had such a motive were permissible. Her response to the challenged question merely was that she did not know of any motive that her daughter had to fabricate the allegation of abuse. We conclude that the post-conviction court correctly determined that the question and answer at issue here were permissible. *See, e.g.*, *People v. Evans*, 192 AD2d 671, 672, 597 NYS 2d 90 (NY App Div 1993) (holding that remarking on witness's lack of motive to lie is proper and does not constitute vouching); *State v. McCall*, 139 Az 147, 159, 677 P2d 920, 932 (1983) (eliciting testimony that witness agreed to testify truthfully pursuant to plea agreement "does not amount to improper vouching but simply demonstrates that the witness had no motive to testify falsely"); *United States v. Wellington*, 754 F2d 1457, 1468 (9th Cir), *cert den*, 474 US 1032 (1985) (holding prosecutor's question, "Why would [the witness] not tell you the truth?" not vouching); *United States v. Ricco*, 549 F2d 264, 274 (2nd Cir), *cert den*, 431 US 905 (1977) (prosecutor's comments not improper vouching but permissible argument that "witnesses, whose veracity and credibility had been fiercely attacked by defense counsel, had no motive to testify falsely").

However, even if we were to conclude otherwise, we would nonetheless affirm in this case, because petitioner has failed to demonstrate prejudice. That is so because, before AH's mother testified, the following testimony was admitted into evidence in the underlying criminal case. AH's father testified about when she told him of the abuse. He stated:

"Q.  Did it take you a minute to understand?

"A.  It took—yeah. I had to soak it in. I couldn't believe it at first, I was just like—but my daughter doesn't lie. Why

would—why would she say something like that if it ain't true?

"Q. You said your daughter doesn't lie?

"A. She does not lie."

Petitioner has not argued in this post-conviction proceeding that AH's *father's* testimony constituted an inadmissible comment on her credibility, to which counsel should have objected. The father's testimony, unlike that of the mother, contains a direct comment on the credibility of AH. Given that petitioner does not challenge that testimony, we conclude that there is little likelihood that the alleged error in the admission of AH's mother's testimony had a tendency to affect the outcome of the criminal case.

Affirmed.