Argued and submitted November 30, 2010, convictions for first-degree sexual abuse, second-degree sexual abuse, third-degree sexual abuse, attempted third-degree sexual abuse, first-degree unlawful sexual penetration, and second-degree unlawful sexual penetration reversed and remanded; otherwise affirmed March 9, both petitions for review denied July 28, 2011 (350 Or 571)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID CHRISTOPHER GONZALES,
*Defendant-Appellant.*

Deschutes County Circuit Court
06FE0318AB; A136016

250 P3d 418

Susan Fair Drake, Senior Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

David Christopher Gonzales filed the supplemental brief *pro se*.

Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General. With them on the respondent's supplemental brief was David B. Thompson, Interim Solicitor General.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge pro tempore.

BREWER, C. J.

**BREWER, C. J.**

Defendant was convicted of six counts of first-degree sexual abuse, ORS 163.427; two counts of second-degree sexual abuse, ORS 163.425; two counts of third-degree sexual abuse, ORS 163.415; one count of attempted third-degree sexual abuse, ORS 163.415; one count of first-degree unlawful sexual penetration, ORS 163.411; one count of second-degree unlawful sexual penetration, ORS 163.408; 31 counts of delivery of a controlled substance to a minor, ORS 475.995 (2003), *renumbered as* ORS 475.906 (2005); and three counts of furnishing alcohol to a minor, ORS 471.410. On appeal, defendant raises numerous challenges to his convictions, none of which he preserved in the trial court, and all of which he contends involve errors that are apparent on the face of the record. ORAP 5.45.

First, defendant argues that the trial court erred in giving a fatally flawed jury instruction on the definition of unlawful sexual penetration. Second, he argues that, in light of the Supreme Court's decisions in *State v. Lupoli*, 348 Or 346, 234 P3d 117 (2010), and *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), the trial court erred in admitting medical diagnoses of child sexual abuse of three of the victims. Third, he contends that the evidence was insufficient as a matter of law to support the first-degree sexual penetration conviction and that the trial court should have *sua sponte* acquitted him on that count. Finally, he raises several evidentiary issues in a *pro se* supplemental brief that we reject without discussion. As explained below, we conclude that the admission of the medical diagnoses of child sexual abuse constituted plain error and that defendant is entitled to a new trial because of that error. In light of that conclusion, we need not reach his arguments concerning the jury instruction because, if the same instruction is proffered again on retrial, defendant will have ample opportunity to raise and preserve any objection to it at that time. As for his argument that the trial court should have acquitted him *sua sponte* on the first-degree unlawful sexual penetration count, we conclude that no error is apparent on the face of the record. Accordingly, we reverse and remand the convictions for first-degree sexual abuse, second-degree sexual abuse, third-degree sexual abuse, attempted third-degree sexual abuse, first-degree unlawful

sexual penetration, and second-degree unlawful sexual penetration; we affirm on the remaining convictions because the error in admitting the medical diagnoses of child sexual abuse had no bearing on those convictions.

We first address defendant's argument that the trial court should have *sua sponte* acquitted him on the first-degree sexual penetration count, because, if he is correct, that assignment of error would afford him the most relief as to that count. In determining whether a judgment of acquittal should have been granted, we view the evidence in the light most favorable to the state and draw all reasonable inferences in the state's favor to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Lupoli*, 348 Or at 366.

The count in question alleged first-degree unlawful sexual penetration as follows:

> "That the said defendant, between or about the 15th day of December 2000 and the 2nd day of January 2003, in Deschutes County, Oregon, did unlawfully and knowingly penetrate the vagina of [CM], a person under the age of twelve years, with an object other than the defendant's penis or mouth. The State further alleges that this count is a separate and distinct criminal act from all other counts."

At trial, CM, who was a friend of defendant's daughter, testified that, when she was in second grade, she stayed overnight at defendant's house. She was lying on the couch in the living room when defendant began to rub her legs, and had her rub his legs. She testified that he rubbed further up her leg until he touched her "private." She testified that he touched her underneath her clothes. She was asked: "Did he ever touch you inside of your private?" She responded: "No, not all the way inside, but like in the lips of it." The physician who examined CM (and ultimately diagnosed sexual abuse, as discussed below), testified that, during her examination of CM, she had asked CM to show her where defendant had touched her.

> "And she pointed to her labia. Those are the outside lips, the labia, the lips of the—of the—a girl's private parts. And then she said on her own, 'More in.' She pointed to that part and then said, 'More in.'"

The physician touched CM's labia and asked if defendant's fingers had been "deeper inside" and CM responded that they had. The physician asked CM if defendant's fingers had been "up inside her private part," and CM responded that they had not. The physician opined that CM had been touched inside the labia but not inside the vagina.

■     As noted, defendant did not move for a judgment of acquittal on this count. On appeal, he argues that a conviction under ORS 163.411, which requires that the state prove that a defendant "penetrates the vagina, anus or penis of another with any object other than the penis or mouth," cannot be sustained because the evidence demonstrates only penetration of the labia, and not of the vagina.

■     Defendant contends that the error is apparent on the face of the record. ORAP 5.45. Error is apparent on the face of the record if (1) the error is one of law; (2) the error is "apparent," in that the "legal point is obvious, not reasonably in dispute"; and (3) the error appears "on the face of the record" so that "[w]e need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990).

We acknowledge that the asserted error is one of law, and assume for the sake of argument that the legal point at issue here—that ORS 163.411 requires proof that the vagina rather than only the labia was penetrated—is not reasonably in dispute.[1] The problem with defendant's argument is with the third prong of the *Brown* test—the "facts that comprise the error" here are not "irrefutable."

As noted, the parties did not raise before the trial court any legal issue concerning the importance of distinguishing between CM's labia and her vagina. CM testified that defendant penetrated "in the lips" of her "private"—but

---

[1] We note that the origin of the rule of law concerning evidence of penetration, "however slight," traces back to the common law of rape. *See, e.g.*, *State v. Poole*, 161 Or 481, 501, 90 P2d 472 (1939) (approving of jury instruction that indicated that proof could consist of "a very slight penetration not passing beyond the outer labia"); *see also* ORS 163.305(7) (currently defining "sexual intercourse" as occurring "upon any penetration, however slight").

she was never asked precisely what she meant by her "private." She further testified that defendant did not penetrate "all the way inside." From that testimony, it would be speculative to infer that defendant penetrated only CM's labia and not her vagina. The victim used neither of those terms, nor was she asked to clarify which portions of her "private" had been touched.

Defendant, however, relies on the testimony of the physician who examined CM, and who opined, based on statements that CM made during the examination, that the touching had been in the labia and not inside the vagina. We believe that defendant reads too much into the physician's testimony. As noted, no legal issue was raised concerning the degree of penetration necessary to establish the offense—it would be sheer speculation to assume that, if the physician had been asked whether defendant's fingers could have penetrated slightly beyond CM's labia into her vagina, she would have said "no." In sum, in the absence of any evidence that distinguished between the labia and the vagina for purposes of this offense—and because the victim's own testimony did not establish the precise degree of penetration that occurred—we would have to choose among competing factual inferences in order to say that, as a matter of law, the court should have *sua sponte* declared that the evidence failed to establish sufficient penetration to create a jury question as to whether first-degree sexual penetration had occurred. Accordingly, we reject defendant's assertion that the trial court committed plain error in failing to *sua sponte* acquit him of that charge.

Defendant's two remaining challenges concern the jury instruction on sexual penetration, *see* 241 Or App at 357 n 1, and the admission of medical testimony diagnosing sexual abuse as to all three of the victims named in the counts alleging various sexual abuse and unlawful sexual penetration crimes. With respect to the jury instruction, defendant argues that, although counsel informed the trial court that he believed the instruction was an accurate statement of the law, it nonetheless was plain error for the court to give the instruction because—as he asserted in the assignment described above—unlawful sexual penetration requires specific proof of penetration of the vagina, not merely the

labia. Given our conclusion below that defendant is entitled to a new trial on all of the counts alleging unlawful sexual penetration and sexual abuse, we do not reach defendant's argument concerning the jury instruction. We will not speculate as to whether that issue is likely to arise on remand.

■ Finally, citing *Southard* and *Lupoli*, defendant argues that medical testimony diagnosing CM and two other children as having been sexually abused should not have been admitted into evidence. We agree. A lengthy description of the evidence in question is not necessary. Suffice it to say that all three victims were evaluated by medical experts concerning their allegations that defendant had committed sex crimes against them. No physical evidence of sexual abuse was found by any of those medical experts. Each diagnosis of child sexual abuse was based, in pertinent part, on the expert's opinion that the child victim was telling the truth about what had occurred. Moreover, each expert testified at length about the aspects of the children's narratives that led them to believe that the children were credible, such as the consistency of details provided over time, the words that the children used to describe the abuse, and the emotional reactions that the children described. In *Southard*, the court held that a medical diagnosis of child sexual abuse based on a medical professional's assessment of the victim's description of what had occurred was scientifically valid evidence but that, in the absence of physical evidence of abuse, the diagnosis should have been excluded on the ground that its admission would be unfairly prejudicial under OEC 403:

> "The only question on review is whether a diagnosis of 'sexual abuse'—*i.e.*, a statement from an expert that, in the expert's opinion, the child was sexually abused—is admissible in the absence of any physical evidence of abuse. We hold that where, as here, that diagnosis does not tell the jury anything that it could not have determined on its own, the diagnosis is not admissible under OEC 403."

*Southard*, 347 Or at 142.

In *Lupoli*, the court considered a similar question. There, the defendant did not assert that the diagnoses themselves were scientifically invalid but argued that, in describing the manner in which they arrived at their diagnoses, the

expert witnesses had engaged in impermissible "vouching" for the truthfulness of the victims. *Lupoli*, 348 Or at 362-63. The court agreed:

> "Avila's diagnosis, given the lack of physical evidence of abuse, necessarily was based on her assessment of the child's believability. When Avila then was asked the basis for her diagnosis, she was implicitly declaring, with each statement and description, why she had found SM to be credible. She did so explicitly as well, as when she explained that 'the manner in which [SM] told her story was pretty compelling' and that 'it had an effect' on her forming her diagnosis."

*Id.* at 362 (brackets in original). The court discerned similar problems with the testimony of the other health care professionals. *Id.*

The problems identified in *Southard* and *Lupoli* also inhere in the expert testimony at issue in this case. That testimony concerned diagnoses of child sexual abuse that necessarily were based on the experts' opinions that the children's accounts of what had occurred were credible. Moreover, we conclude that the errors are errors of law, not reasonably in dispute after the decisions in *Southard* and *Lupoli*, and discerning them does not require us to "go outside the record or choose between competing inferences." *Brown*, 310 Or at 355.

■■ The question remains whether we should exercise discretion to correct the errors. One factor that we consider in determining whether to exercise our discretion to correct an unpreserved error is "the gravity of the error." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). The state argues that the gravity of the error here is "insignificant," noting that each of the victims testified and, thus, the jury had an opportunity to assess each victim's credibility. We disagree. As the court noted in *Southard*, the prejudicial impact of expert testimony that a child has been sexually abused is very significant. 347 Or at 140-41. As noted, in this case there was no physical evidence of the crimes in question. Only the child victims testified as to the particulars of the offenses.[2] Defendant testified, denying all intimate

---

[2] Some of the charges did involve situations in which another child was allegedly in the room at the time. However, the other children did not confirm that they actually observed any abuse.

contact with two of the victims, and he asserted that, although an intimate contact had occurred with CM, it involved an inadvertent touching while both he and CM were asleep. Given that evidence, we do not agree with the state that the bolstering effect of the expert testimony was "insignificant" in this case. Accordingly, we conclude that the error is one that we should exercise our discretion to correct.

Convictions for first-degree sexual abuse, second-degree sexual abuse, third-degree sexual abuse, attempted third-degree sexual abuse, first-degree unlawful sexual penetration, and second-degree unlawful sexual penetration reversed and remanded; otherwise affirmed.