Argued and submitted August 31, 2011, reversed and remanded February 1, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHARLES MATTHEW FERGUSON,
*Defendant-Appellant.*

Baker County Circuit Court
08742; A142803

271 P3d 150

Meredith Allen, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

ORTEGA, P. J.

---

* Brewer, C. J., *vice* Rosenblum, S. J.

## ORTEGA, P. J.

Defendant appeals a judgment convicting him of first-degree rape, ORS 163.375, second-degree sexual abuse, ORS 163.425, and furnishing alcohol to a minor, ORS 471.410. Of his four assignments of error on appeal, we write only to address defendant's contention that the trial court erred in admitting into evidence testimony from the victim's father that, if he had believed that the victim had not been raped, but rather had merely "made a mistake after drinking, he would not have let anyone call the police." We agree with defendant that that testimony was admitted in error and, therefore, reverse and remand.[1]

Defendant, who was 28 years old at the time of the incident in question, and the victim, who was 19 years old, met through a mutual friend. After they had known each other for about one month and had socialized together several times at the victim's home, the victim invited defendant over for dinner. Defendant arrived with a bottle of tequila, and, over the course of the evening, the victim drank alcohol in amounts that caused her to become extremely intoxicated and ill. After telling her roommate and defendant that she was going to bed, the victim went into her room to lie down on her bed. Defendant followed her and then accompanied her into the bathroom and held her hair while she vomited. He then went back into the victim's bedroom with her, sat down on her bed, and eventually kissed her. She told him to "just go away" and that she was not interested.

On prior occasions when the victim and defendant had socialized, she had discussed relationship problems with him and had told him that she was a virgin and wanted to remain so until she was married. On the evening in question,

---

[1] Our analysis and disposition of that issue obviates the need to address defendant's remaining evidentiary, merger-related, and jury instruction assignments of error. As to defendant's contention that the trial court committed plain error in instructing the jury that it could convict him by a nonunanimous verdict, we note that this court has previously rejected that challenge. *See State v. Cobb*, 224 Or App 594, 596-97, 198 P3d 978 (2008), *rev den*, 346 Or 364 (2009) (rejecting a challenge to a conviction based on nonunanimous verdict); *State v. Bowen*, 215 Or App 199, 168 P3d 1208 (2007), *modified on recons*, 220 Or App 380, 185 P3d 1129, *rev den*, 345 Or 415 (2008), *cert den*, 558 US 52 (2009) (rejecting a challenge to the trial court's refusal to instruct the jury that, to convict the defendant, a unanimous verdict was required).

after the victim told defendant to go away, he responded that she "didn't need to worry about it" and that "he'd never take that from [her]." Thereafter, the victim "passed out" on her bed with defendant sitting behind her fully clothed. When she passed out, the victim was wearing a tank top, pajama pants, and underwear.

The victim awoke the next morning to find defendant naked and lying beside her in the bed. Her pants were off and she felt pain in her abdominal and vaginal areas. When defendant woke up, the victim was crying and only shook her head when he asked if she was okay. He then got up and left, saying that he was going to work.

Later that day, the victim sent a text message to defendant asking him what had happened. Over a series of text messages, defendant told the victim that they had had consensual sex during the night. It was the victim's view, however, that defendant had raped her. She did not remember anything between the time she passed out and when she woke up the next morning, and she testified that she had not been interested in defendant romantically and had been angry when he kissed her, that she would not have done anything to lead him on in any way, and that she did not want to have sex. It also had been important to her to wait until she was married to have sex.

The victim called a family friend, Hansen, for help, and also asked her father to come to her house. When her father arrived, the victim was crying and told him that she had been raped. The victim's father instructed Hansen to call and report the incident to the police, and Hansen did so. An examination later conducted at the emergency room was normal and revealed no signs of injury, but the examining physician affirmed that a normal examination would be expected under the circumstances.

Defendant was charged with first-degree rape based on the victim's inability to consent by reason of physical helplessness, second-degree sexual abuse, and furnishing alcohol to a minor. Following a trial, the jury returned guilty verdicts on all three charges.

On appeal, defendant challenges the following trial testimony from the victim's father:

"A She just—well, she was crying. And she finally calmed down enough to speak. And she said, daddy, he raped me.

"* * * * *

"Q * * * Ultimately * * * was [the victim] okay with the police being called?

"A At first, she was concerned, but then it was okay. She was just—it's unfamiliar territory for us. You know—being—being in here (inaudible)—to be dealing with the law, and you know—coming in on a deal like this, it's just—she was scared.

"Q Okay, but ultimately, she was okay with the—

"A Oh, yes, sir.

"Q police being called?

"A She was—she was ready.

"Q Okay. Um—you and [the victim] are—how would you describe your relationship. Are you close?

"A Very, very close.

"* * * * *

"Q Okay. Um—did you know—uh—this issue about her wanting to keep her virginity until she was married?

"A Yes, sir. I did.

"Q Did you know that that was important to her?

"A Very important.

"Q * * * [Y]ou knew alcohol was involved in this?

"A Yes, sir. I did.

"* * * * *

"Q You two are close though?

"A Yeah.

"Q *Okay. If you had any inkling that—that this was just a mistake on her part, in terms of having sex before she*

*wanted to get married, would you have let the police be called?*

"[DEFENDANT:] Objection, Your Honor, it's a back-handed comment on the credibility of a witness.

"[STATE:] I'm asking him about his decision.

"THE COURT: That is correct. Overruled.

"Q Would you have let the police be called?

"A Yes, sir. I would have.

"Q If you thought she had just made a mistake?

"A Oh, no. I'm sorry. I—

"Q *Okay. So, if you * * * had thought she had just made a mistake, got drunk, but had sex with somebody knowingly, would you have let the police be called?*

"A —oh, no, sir.

"Q Okay.

"A I don't deal like that."

(Emphasis added.)

Defendant contends that the trial court erred in admitting the victim's father's testimony that he would not have allowed the police to be called if he had believed that the victim had mistakenly but knowingly had sex with someone while she was drunk. Defendant argues that the testimony was an impermissible comment on the victim's credibility. The state responds that the testimony was not about whether the victim's father "believed his daughter was lying or telling the truth, * * * but rather about the motivation behind his decision to involve the police and whether he did so because he believed defendant had raped his daughter." Furthermore, the state maintains that, even if the testimony was erroneously admitted, any error was harmless.

"[I]n Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983); *see State v. Milbradt*, 305 Or 621, 629-30, 756 P2d 620 (1988) ("[t]he assessment of credibility is for the trier of fact" and an "opinion that a person is not deceptive, could not lie

without being tripped up, and would not betray a friend" is tantamount to an opinion on credibility and inadmissible); *see also State v. Keller*, 315 Or 273, 285, 844 P2d 195 (1993) ("[A] witness may not testify about the credibility of another witness."). "Applying that principle is a straightforward matter when one witness states directly that he or she believes another witness, or that the other witness is honest and truthful. However, statements that fall short of such overt vouching also may be impermissible." *State v. Lupoli*, 348 Or 346, 357, 234 P3d 117 (2010).

Defendant asserts that the evidence at issue in this case is similar to that considered in *State v. Vargas-Samado*, 223 Or App 15, 195 P3d 464 (2008). In that case, the defendant was charged with sexually abusing his former stepdaughter. At trial, the prosecutor asked the victim's mother whether, based on the victim's demeanor, she had any reason "to doubt what [the victim] was relating about what happened between her and the defendant was the truth[.]" 223 Or App at 17. The witness responded that she "never doubted [the victim] for a second." *Id.* We concluded that that testimony constituted impermissible vouching, stating that it "went directly to the core of the victim's truthfulness." *Id.* at 18.

The state, on the other hand, points to our decision in *Easter v. Mills*, 239 Or App 209, 243 P3d 1212 (2010), *rev den*, 350 Or 130 (2011), in which we analyzed the admissibility of testimony from the mother of a victim of sexual abuse. One issue in that case was whether the victim "had a motive to lie about the abuse, because she was angry with" the abuser and his daughter. *Id.* at 215. The state asked the victim's mother whether she "kn[e]w of any reason why [her] daughter would make [the sexual abuse allegations] up" and the witness testified that she did not. *Id.* at 212. We observed that the questioning at issue was not about whether the victim's mother believed that the victim was telling the truth, nor did the witness's "answer reveal whether she believed that [the victim] was telling the truth[.]" *Id.* at 214. Instead, the question was whether the mother "knew of any motive [the victim] would have to lie." *Id.* Although we observed that the questioning might "skate close to the edge of what is permissible," we concluded, given the fact that the victim's

motive to lie was at issue in the case, that "questions of [the victim's] mother concerning whether she knew if her daughter had such a motive were permissible." *Id.* at 214-15.

The Oregon Supreme Court's decision in *Lupoli* is also instructive. In that case, the court considered, among other things, the admissibility of a diagnosis of child sexual abuse made in the absence of supporting physical evidence. The court stated that such a diagnosis, "given the lack of physical evidence of abuse, necessarily was based on [an] assessment of the child's believability." 348 Or at 362. Such evidence, although perhaps not an explicit comment on credibility, amounts to impermissible vouching. *Id.* at 361-62; *see State v. Bainbridge*, 238 Or App 56, 59, 241 P3d 1186 (2010) (discussing *Lupoli*'s holding that a "diagnosis based purely on an assessment of the victim's credibility * * * amounts to impermissible vouching").

In view of those cases, we examine the testimony at issue in light of the surrounding circumstances, including the basis of the witness's statements. In doing so, we keep in mind that testimony that is not an explicit comment on the credibility of a witness may still amount to impermissible vouching under the circumstances of a particular case. Based on those considerations, we conclude that the trial court erred in admitting the testimony at issue because it was an indirect comment on the victim's credibility.

Here, because the victim had no memory of sexual activity with defendant, the state suggests that her credibility was not at issue. We disagree. The victim testified that she believed that she had been raped and had not had sex with defendant willingly. To support that view of the case, the state presented testimony from the victim that (1) before the incident with defendant, she had been a virgin and had wanted to remain so until marriage; (2) she had not been romantically interested in defendant; (3) she had not wanted to have sex; and (4) she would not have done anything to lead defendant to believe otherwise. In other words, her testimony related to the fact that she would not have willingly had sex with defendant. Contrary to the state's view, then, the victim's credibility was indeed at issue. Her father's testimony indirectly vouched for her credibility on all of those points

and suggested to the jury that they should believe her because her father, with whom she was "very close," believed her.

We also reject the state's assertion that any error in admitting the testimony at issue was harmless. "We will affirm a judgment of conviction notwithstanding the erroneous admission of evidence if there is little likelihood that the admission of the evidence affected the verdict." *State v. Maiden*, 222 Or App 9, 13, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009). The "focus of that inquiry 'is on the possible influence of the error on the verdict rendered[.]' " *Id.* (quoting *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003)). In this case, as noted, the victim's credibility was at issue before the finder of fact and the improper evidence may have colored the jury's consideration of that issue. Given all the circumstances, we cannot conclude that there is little likelihood that the admission of the improper vouching evidence affected the verdict in the case.

Reversed and remanded.