Submitted February 28, reversed and remanded April 18, petition for review denied September 13, 2012 (352 Or 378)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## TIMMOTHY SCOTT LOWELL,
*Defendant-Appellant.*

Marion County Circuit Court
09C44219; A143776

277 P3d 588

Peter Gartlan, Chief Defender, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant. Timmothy Scott Lowell filed the supplemental brief *pro se.*

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Edmonds, Senior Judge.

ORTEGA, P. J.

Edmonds, S. J., concurring.

## ORTEGA, P. J.

Following a jury trial, defendant was convicted of third-degree rape. ORS 163.355.[1] He appeals, arguing that the trial court erred in permitting the investigating detective to comment on the credibility of defendant and the complainant. We agree with defendant that the trial court plainly erred and that it is appropriate to exercise our discretion to correct the error.[2] Accordingly, we reverse and remand.

The case arises out of allegations that defendant, who was 23 at the time of the alleged incident, engaged in consensual sexual intercourse with the complainant, who was 14 years old. Based on that allegation, defendant was charged with third-degree rape.

During the trial, both defendant and the complainant testified. The complainant described the events on the day in question and stated that she and defendant had engaged in sexual intercourse. Defendant, on the other hand, testified that he had not engaged in sexual intercourse with the complainant. Staples, a detective who investigated the case, also testified. According to Staples, in his interview with the complainant,

"[she] told me that she knows [defendant] and that she has known him for a couple of years and that on May 3rd, 2009, that she saw him down at the Salem Center Mall. They started talking—this was about 3 p.m. or so—they started talking, hanging out together as she described this.

"She stated eventually throughout the day, gotten into the evening about 8 o'clock or so, they walked down to where the stern-wheeler is docked, started walking down under the ramp. And they had a conversation about whether * * * or not she wanted to have sex. She agreed to have sex with him.

"They went under the * * * dock and had sexual intercourse. She stated that [defendant] wore a * * * condom and that after the intercourse, he told her not to say anything to any of his friends. And I asked why, and she said she was—

---

[1] Pursuant to ORS 163.355(1), "[a] person commits the crime of rape in the third degree if the person has sexual intercourse with another person under 16 years of age."

[2] We reject without discussion defendant's assignment of error raised in his *pro se* supplemental brief.

because of her age, basically. And that after the intercourse, they continued to hang out together and eventually went to a friend's house."

With regard to the interview, the prosecutor asked Staples to "describe [the complainant's] demeanor while she was talking about this" and whether there was "anything that kind of raised any flags for" Staples. He responded:

"That raised any flags, no. She was somewhat giddy about this and felt that he was going to be her new boyfriend. She was somewhat excited about this."

Staples also testified regarding his interview with defendant:

"He stated that [on Sunday, May 3] they hung out together in the downtown mall area for approximately an hour. He stated that he then left and didn't remember what they did after that.

"Q. Okay. And did he indicate to you when he left whether or not [the complainant] was with him?

"A. He said they only hung out for about an hour and then that was it.

"Q. Okay. So then what did you do?

"A. I asked him if he had ever had sexual intercourse with her and he said, no, he didn't. I asked him if he went down to the—to where the stern-wheeler was docked, that area at the park, and he said no.

"I then asked him if he was sure because we possibly had video of him down there at that area, which we did not; it was a ruse to try and see if he would admit to being there. He then said that he didn't really remember where he was at and he was not sure if he was in the park or not. I then asked again if he had, in fact, had sexual intercourse with her, and he said no.

"* * * * *

"Q. Okay. So at this point, then, what was your impression about his honesty in the investigation so far?

"A. I didn't think that he was being very honest and upfront.

"Q. Okay. So what happened next?

"A. At this time I * * * asked him again, you know, did you have sex with her, and he stated: I swear to God I didn't have sex with her.

"To me that's an indication that somebody is not being truthful. I've gone to several classes on interview and interrogation and there are certain phrases that are said and that's one of the phrases of an indication if somebody is being less than truthful.

"Q. Is that consistent with your experience?

"A. Yes, it is."

Later, when the detective informed defendant that he was under arrest, "[h]e started yelling and * * * crying. Basically saying all I did was smoke dope with her; that he did not have sexual relations with her." Throughout the entire interview, defendant "denied any type of sexual contact or activity altogether." Ultimately, defendant was found guilty and convicted of third-degree rape.

On appeal, defendant asserts that the trial court erred in allowing Staples to comment on the credibility of the complainant and defendant. He asserts that Staples's statement that nothing about complainant's statement "raised any flags" was an impermissible comment on her credibility. Additionally, he contends that the detective's statements regarding his view of defendant's honesty were "a direct comment on * * * credibility" and should have been excluded. Defendant concedes that he failed to preserve his assignments of error before the trial court but asks us to review them as plain error under ORAP 5.45.[3] The state responds that the trial court did not commit plain error and, in the alternative, that we should decline to exercise our discretion to address defendant's claims of error.

An error is plain if it is a legal error that is obvious or not reasonably in dispute and the court need not go outside the record or select among competing inferences to discern it. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). If we conclude that an asserted error is plain, we must determine

_____

[3] Under ORAP 5.45(1), "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *, provided that the appellate court may consider an error of law apparent on the record."

whether to exercise our discretion to address the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). We conclude that the trial court committed plain error in admitting Staples's testimony concerning defendant's credibility and, therefore, do not discuss the detective's comments relating to the complainant's credibility.

Under Oregon law, "a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983); *see State v. Milbradt*, 305 Or 621, 629-30, 756 P2d 620 (1988) ("[t]he assessment of credibility is for the trier of fact" and an "opinion that a person is not deceptive, could not lie without being tripped up, and would not betray a friend" is tantamount to an opinion on credibility and inadmissible); *see also State v. Keller*, 315 Or 273, 285, 844 P2d 195 (1993) ("[A] witness may not testify about the credibility of another witness."). "Applying that principle is a straightforward matter when one witness states directly that he or she believes another witness, or that the other witness is honest or truthful. However, statements that fall short of such overt vouching also may be impermissible." *State v. Lupoli*, 348 Or 346, 357, 234 P3d 117 (2010); *see also State v. Ferguson*, 247 Or App 747, 271 P3d 150 (2012) (witness's statement that he would not have called the police if he had not believed complaining witness was an impermissible comment on credibility).

Here, at least with respect to the detective's statements relating to defendant, the testimony constitutes a direct comment on defendant's credibility. Indeed, the state does not dispute that Staples's statement regarding defendant was a comment on credibility. Instead, the state asserts that the admission of that testimony does not qualify for plain error review because the court would have to choose between competing inferences—"one of which is that defendant made a conscious decision not to object" to the testimony—to decide the issue. *See State v. Gornick*, 340 Or 160, 169-70, 130 P3d 780 (2006) (where the record raises an inference that a defendant may have chosen not to object for strategic reasons, there is no plain error). According to the state, among other things, the cross-examination of the detective regarding "why a suspect might lie during a police interview," defendant's attempts during trial to "draw the jury's

attention to the [complainant's] tendency to exaggerate feelings about defendant and other people," and the cross-examination of the complainant regarding "whether she was making things up" support the inference that defendant made a strategic choice not to object to the detective's statements regarding his credibility. We are not persuaded.

None of the portions of the record to which the state refers supports an inference that defendant had a strategic reason for failing to object. Rather, the cited portions constitute only attempts to explain the inconsistent parts of defendant's statements to Staples during the interview and to discredit the complainant's version of the facts. As we stated in *State v. Lovern*, 234 Or App 502, 512, 228 P3d 688 (2010), " 'competing inferences,' for purposes of plain error analysis, must be plausible—and the inference that the state posits is not plausible." In sum, we agree with defendant that admission of the detective's comments on defendant's credibility constitutes plain error.

In determining whether to exercise our discretion to correct such an error, we consider, among other things,

"the competing interest of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]"

*Ailes*, 312 Or at 382 n 6.

Here, the gravity of the error and the ends of justice require that we exercise our discretion to correct the error. The state asserts that we should decline to do so because defendant testified that he had lied to Staples and, therefore, the detective's testimony was cumulative and "likely had little if any effect on the verdict." We disagree. Defendant did not, in fact, testify that his entire statement to Staples was a lie, nor did he state that he lied when he repeatedly denied having engaged in sexual intercourse with the complainant. Instead, defendant testified that, when the detective questioned him about how long he had been with the complainant on the day in question, defendant wanted to "keep [him]self away from the park" because he knew he had "smoked weed around a minor * * * and [he] was afraid [that he] was going

to get in trouble for it." None of defendant's testimony regarding being untruthful with the officer during the interview related to his statements that he did not have sex with the complainant. Staples's testimony, on the other hand, was that he believed that defendant was lying to him and that, based on Staples's training and experience, defendant's statement that he "sw[ore] to God" that he did not have sex with the complainant clearly indicated that he was being untruthful. In a case that boiled down, in large part, to a credibility contest between the complainant and defendant, evidence commenting on the credibility of either was likely to be harmful. That the officer's testimony was couched in terms of his expertise in identifying untruthfulness—that he had attended "several classes on interview and interrogation" and, based on that training and experience, he could identify the phrasing used by defendant as indicating that defendant was lying when he denied having sex with the complainant— only increases the significant risk that the jury's verdict was affected. Furthermore, the impact of possible erroneous conviction is significant. A conviction for third-degree rape is a felony that carries with it, among other things, the consequence that defendant must register as a sex offender pursuant to ORS 181.594 to 181.596. In light of those considerations, we conclude that it is appropriate to exercise our discretion to correct the trial court's error in admitting that testimony. *See State v. Gonzales*, 241 Or App 353, 360-61, 250 P3d 418, *rev den*, 350 Or 571 (2011) (exercising discretion to correct error in admitting evidence that constituted impermissible vouching for complaining witnesses under *Lupoli*); *see also Milbradt*, 305 Or at 630 ("We suggest in the future that if counsel attempts to elicit [testimony commenting on the credibility of a witness] the trial judge, *sua sponte*, should summarily cut off the inquiry before a jury is contaminated by it."); *State v. McQuisten*, 97 Or App 517, 520, 776 P2d 1304 (1989) ("[T]he trial court had a duty, *sua sponte*, not to allow testimony which commented on a witness' credibility.").

Reversed and remanded.

**EDMONDS, S. J.,** concurring.

In this case, Detective Staples commented directly on the credibility of defendant's prearrest statements without objection from defendant. Based on existing precedents, I

concur with the majority's conclusion that the failure of the trial court to *sua sponte* strike Staples's testimony commenting on defendant's credibility is error apparent on the face of the record. However, as amplified below, I write separately to express my discomfort with a rule of law that appears to require trial courts to intervene *sua sponte* and strike testimony without the benefit of an objection or a motion from a party in order to avoid error and the reversal of a criminal conviction.

As defendant acknowledges, the claim of error made on appeal was not preserved in the trial court. But for the "plain error" exception in ORAP 5.45(1), defendant's claim of error would not be reviewable. I agree with the majority's conclusion that "plain error" exists on the record before us in light of the language in *State v. Milbradt*, 305 Or 621, 756 P2d 620 (1988), and *State v. McQuisten*, 97 Or App 517, 776 P2d 1304 (1989). In *Milbradt*, the court emphasized, "We suggest in the future that if counsel attempts to elicit similar testimony [(counsel had asked a psychologist what evidence of deception the witness discerned from the witness's evaluation),] the trial judge, *sua sponte*, should summarily cut off the inquiry before a jury is contaminated by it." 305 Or at 630. In *McQuisten*, the defendant moved to strike statements made by an officer that the complaining witness was telling the truth. The trial court denied the motion, and, on reconsideration, we reversed and remanded for a new trial. Relying on *Milbradt*, we pointed out that "the trial court had a duty, *sua sponte*, to not allow testimony which commented on a witness' credibility." *McQuisten*, 97 Or App at 520.

What makes the application of the foregoing precedents uncomfortable is that defendant admitted in his opening statement that he had lied to the officer. In that statement, defense counsel told the jury:

"Good morning, ladies and gentlemen. We appreciate you being here. The first thing Mr. Lowell would like you to know is that he did not have sexual intercourse with [the complainant]. This is going to be a case that there's not going to be any physical evidence. What you will hear today is that indeed Mr. Lowell did initially lie to the police, but in his mind, he had good reason to.

"He was with [the complainant] and he was smoking pot. And he knew that was illegal and he knew he should not be doing it. You are going to hear all about that from him.

"Further, the thing that he wants you to know is that he has remained consistent in his assertion that he did not have sex with her. The officer questioned him over and over and over again, and he remained consistent that he did not have sex with her * * *.

"In fact, you will hear in an audiotape where he asserts that over and over and over and over. So that's what you're going to hear today is Mr. Lowell telling you over and over and over again that he did not have sex with [the complainant]."

Based on defendant's opening statement, the state argues that it is reasonable to infer that defendant made a strategic decision not to object to Staples's testimony. As further support for that argument, the state points to defendant's cross-examination of Staples about why a suspect might lie during a police interview and of the complainant regarding her credibility. In closing argument, defendant again reiterated his position that the complainant had fantasized or lied about having sex with him.

The state's argument is predicated on the legal proposition that, where there are competing inferences—one of which is that a party made a conscious decision not to object—then the "apparent error on the record" exception is inapplicable and should not be utilized by a reviewing court. *See, e.g., State v. Gornick*, 340 Or 160, 130 P3d 780 (2006). The majority rejects the state's argument, concluding:

"None of the portions of the record to which the state refers supports an inference that defendant had a strategic reason for failing to object. Rather, the cited portions constitute only attempts to explain the inconsistent parts of defendant's statements to Staples during the interview and to discredit the complainant's version of the facts."

249 Or App at 369.

I agree with the majority's reasoning. It cannot be reasonably inferred that, by attempting to minimize the effect on the jury of his inconsistent statements to Staples,

defendant's strategy was to not object to Staples's comments regarding defendant's credibility. That said, however, it is apparent from a reading of the entire record that both parties considered it fair game to offer any evidence that was probative of whether the complaining witness or defendant was telling the truth about whether sexual intercourse occurred. Indeed, Staples testified, at one point without objection:

"Q. Okay. So at this point, then, what was your impression about his honesty in the investigation so far?

"A. I didn't think that he was being very honest and upfront.

"Q. Okay. So what happened next?

"A. At this time, I—I asked him again, you know, did you have sex with her, and he stated: I swear to God I didn't have sex with her.

"To me, that's an indication that somebody is not being truthful. I've gone to several classes on interview and interrogation and there are certain phrases that are said and that's one of the phrases of an indication if somebody is being less than truthful."

If defendant had made a timely objection to the above testimony, the trial court could have explored with the lawyers why they believed that the testimony was properly admissible or inadmissible. Defendant's failure to object and his silence in this case prevented the trial court from making an assessment or a record regarding whether the testimony should have been admitted in light of the opening statement and all the other evidence in the case. In general terms, the application of the "plain error" rule under these circumstances permits defendants to lie in ambush and to obtain reversal based on a claim of error regarding an issue that apparently neither party cared about at the time of trial.

In summary, this court is an "error-correcting" court, and its obligation is to follow precedents as established by the Supreme Court. Moreover, the state does not advance any persuasive reason why the "plain error" rule, as defined by its existing construct, does not apply. Nonetheless, my ultimate point is that the Supreme Court should refine the "plain error" rule by establishing specific parameters so that it is

limited to circumstances where it can be demonstrated by the proponent of the use of the rule that the rule's underlying policy is served by its use. Under the current state of the law, it behooves defendants to insert error into the record at the trial level by remaining silent in order to avoid any curative efforts by trial courts or to benefit from their own ignorance of the law in order to assert a claim of plain error for the first time on appeal as a basis for reversal. The court should revisit the policies underlying preservation and "plain error" and define them clearly for the benefit of bench and bar. It is that belief that is at the core of my discomfort and has prompted the writing of a separate opinion in this case.