Argued and submitted July 29, conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed November 5, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RAYMUNDO MARQUEZ-VELA,
aka Raymundo Marques-Vela,
aka Raymundo Vela Marquez,
*Defendant-Appellant.*

Multnomah County Circuit Court
070833798; A152189

338 P3d 813

Robin A. Jones, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Timothy A. Sylwester, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

## TOOKEY, J.

Defendant appeals a judgment of conviction for murder, ORS 163.115(1),[1] (Count 1), arguing that the trial court erroneously allowed Ober, a police detective, to comment on his credibility. We review for legal error. *See State v. Lowell*, 249 Or App 364, 367-68, 277 P3d 588, *rev den*, 352 Or 378 (2012) (concluding that the trial court committed legal error by failing to exclude detective's comments regarding defendant's credibility). We agree with defendant that the trial court erred by failing to exclude Ober's testimony that defendant, during a police interrogation, "was dishonest[,]" "was untruthful[,]" "was lying about the whole situation[,]" and "was selectively leaving out details that he thought [were] harmful to him." We also agree with defendant that the trial court's error was not harmless. Accordingly, we reverse and remand defendant's conviction on Count 1, remand for resentencing, and otherwise affirm.[2]

The record discloses the following facts. Defendant's neighbor, Graham, was alerted by another person that defendant was assaulting defendant's girlfriend. Graham went down to a neighbor's property and attempted to stop the assault by yelling at defendant from beneath defendant's window. Defendant left his apartment, went down to the neighbor's property, got into an altercation with Graham, and stabbed Graham with a carving fork. Graham died on the scene, and defendant fled to Mexico.

Approximately three years later, defendant turned himself in and was interrogated by Ober. During the interrogation, defendant told Ober that he was intoxicated on the night in question and that he remembered little about his actions because he had "blanked out." Defendant was charged with felony assault in the fourth degree and murder, and he raised the defense of voluntary intoxication.

At trial, Ober testified extensively about his interrogation of defendant. To elicit that testimony, the prosecutor

---

[1] ORS 163.115(1) provides, in part, that criminal homicide constitutes murder "[w]hen it is committed intentionally[.]"

[2] Defendant also pleaded no contest to and was convicted of fourth-degree felony assault of his girlfriend as charged in Count 2. That conviction is not at issue on appeal.

posed a series of questions about specific parts of the interrogation, asked Ober whether he had "confronted" defendant with statements that were inconsistent with defendant's claim that he had "blanked out," and solicited Ober's opinion about whether defendant's statements were contradictory. Although Ober provided extensive testimony at trial, we set forth only those parts of his testimony that are relevant to our analysis.

During direct examination, the prosecutor engaged in the following exchange with Ober:

"[PROSECUTOR:] What was [defendant's] demeanor in this interview?

"[OBER:] He was very nonchalant, very casual. He kind of smiled a lot, laughed a lot at seemingly, you know, inappropriate times. He was polite and courteous but he didn't appear to be very serious about it."

Later, but still during direct examination, the following exchange took place:

"[PROSECUTOR:] And what was his demeanor at this point in the interview? Was he still very nonchalant?

"[OBER:] Yes."

During cross-examination, defense counsel pursued the following line of questioning:

"[DEFENSE COUNSEL:] And you described his attitude as nonchalant. * * * Is that right, that you said he was nonchalant when you interviewed him in San Diego?

"[OBER:] Yeah. He didn't seem to be too concerned about it, nonchalant. In fact, when we met him at the border he kind of smiled, looked at us, hesitated, kind of turned around, kind of played with us whether he was going to cross the border or not, and then that attitude continued throughout the interview.

"* * * * *

"[DEFENSE COUNSEL:] Okay. And so is it possible that that's a coping mechanism?

"[OBER:] I don't understand.

"[DEFENSE COUNSEL:] This nonchalant attitude, is that maybe the way that he's coping with an extremely stressful situation?

"[OBER:] I don't know."

Finally, during redirect examination, the following exchange occurred:

"[PROSECUTOR:] Counsel asked you if the defendant's smiling, nonchalant, relaxed atmosphere was some sort of coping mechanism. Have you interviewed a lot of people, Detective?

"* * * * *

"Have you seen people [employ] coping mechanisms, Detective?

"[OBER:] Yes.

"[PROSECUTOR:] And in your opinion, is that what this defendant was doing?

"* * * * *

"[OBER:] I thought that it was more his way of trying to figure out what we know, listening to what he's confronted with, and then responding in a way that would help him in his best interest. *I think that he was dishonest,* that he was choosing—

"[DEFENSE COUNSEL:] I'm going to object. I don't think that he can state an opinion as to what—He can say what was said. He can say if it's—

"THE COURT: I think he can say that. That's his opinion.

"[OBER:] *I think he was dishonest. I think he was untruthful. I think he was lying about the whole situation and he was selectively leaving out details that he thought was harmful to him.* He—

"THE COURT: Okay. You've answered it enough. We don't want to get to credibility.

"[DEFENSE COUNSEL:] And again, I want to interpose an objection on the record to that last answer. It's a comment on credibility.

"THE COURT: Go ahead.

"BY [PROSECUTOR] (Continuing)

"Just to be clear, Detective, are you trying to comment on the defendant's credibility in any way, shape, or form?

"[OBER:]   No. I'm trying—observing what I thought his behavior was."

(Emphases added.)

Defendant did not testify at trial. During closing argument, the prosecutor argued that defendant's conduct was intentional, noted defendant's claim that he did not remember some of what had happened on the night in question, and stated, for example, that defendant "seems to remember things differently when really pressed." Defendant was convicted of murder.

On appeal, defendant argues that the trial court erred by failing to exclude Ober's comments on defendant's credibility as set forth above. He further argues that that error was not harmless because the jury's verdict on the murder charge turned on the jury's assessment of whether defendant acted intentionally, rather than recklessly, and the jury's determination "was almost entirely a matter of its assessment of defendant's credibility."

The state "does not dispute" that Ober's testimony that defendant "was dishonest[,]" "was untruthful[,]" and "was lying" would have been inadmissible if it "had been elicited during direct examination." Nevertheless, the state argues that that testimony was admissible as rebuttal evidence—that is, it was admissible because it was elicited during the prosecutor's redirect examination of Ober to rebut defense counsel's suggestion, made during cross-examination, that defendant displayed a "nonchalant" attitude as a coping mechanism to deal with stress. Thus, according to the state, "defense counsel opened the door to [Ober] opining, to the contrary, that defendant was being 'dishonest' and manipulative for strategic purposes." The state further argues that any error was harmless.

The Oregon Supreme Court has stated that "[w]e reject testimony from a witness about the credibility of another witness[.]" *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983). Thus, under Oregon law, "a witness, expert

or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *Id.* The court has also stated, "We have said before, and we will say it again, but this time with emphasis—*we really mean it* \* \* \*. The assessment of credibility is for the trier of fact[.]" *State v. Milbradt*, 305 Or 621, 629, 756 P2d 620 (1988) (emphasis added). Thus, as time has gone on, the court has "amplified the importance of that rule[.]" *State v. Salas-Juarez*, 264 Or App 57, 63, 329 P3d 805 (2014).

"Applying that principle is a straightforward matter when one witness states directly that he or she believes another witness, or that the other witness is honest or truthful. However, statements that fall short of such overt vouching also may be impermissible." *State v. Lupoli*, 348 Or 346, 357, 234 P3d 117 (2010) (concluding that health care professionals' testimony regarding child victims of sexual abuse was impermissible vouching). Under the principle set forth in *Lupoli*, "a witness at trial may not comment on the credibility of another person regarding statements made by the other person, even if the other person is not a witness at trial." *State v. Brooks*, 247 Or App 676, 681 n 2, 270 P3d 388, *rev den*, 352 Or 265 (2012) (emphases omitted).

As noted, the state here "does not dispute" that the challenged testimony would ordinarily be inadmissible. That position is well considered, given that Ober directly commented on defendant's credibility. *See Lowell*, 249 Or App at 366-68 (trial court committed plain error by admitting detective's testimony commenting on the defendant's credibility, including that the detective "didn't think that [the defendant] was being very honest" during the investigation).

The state nevertheless argues that that testimony was admissible because defendant "opened the door" to Ober's comments. To support that contention, the state cites three cases: *State v. Miranda*, 309 Or 121, 128, 786 P2d 155, *cert den*, 498 US 879 (1990) ("A defendant's own inquiry on direct examination into the contents of otherwise inadmissible statements opens the door to further inquiry on cross-examination relating to those same statements."); *State v. Johnson*, 342 Or 596, 622, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008) ("Defendant does not dispute that a party

may open the door to evidence that has been suppressed."); and *State v. Robinson*, 244 Or App 368, 381, 260 P3d 671 (2011), *rev den*, 352 Or 33 (2012) ("[O]nce defendant elicited testimony suggesting that he had refused [the breath test] only because he could not obtain counsel, the door was open for the prosecutor to comment on defendant's reasons for refusing the test.") (emphasis omitted).

The state's argument is unpersuasive. First, none of the state's cited cases stands for the proposition that a defendant's questioning during cross-examination, such as occurred in this case, "opens the door" for a witness to then comment on a defendant's credibility. Although a defendant's trial strategy may "open the door" to otherwise inadmissible evidence in some cases, a defendant's trial strategy does not, in every case, "open the door" to otherwise inadmissible evidence. *See, e.g.*, *State v. Moller*, 217 Or App 49, 53-54, 174 P3d 1063 (2007) (rejecting the state's argument that a "defendant 'opens the door' to testimony about a decision to invoke his constitutional rights merely by denying that he committed the crime charged"). The state cites no principle from *Middleton* or its progeny that supports its argument.

Second, the state does not cogently explain, and we do not understand, how a defendant "opens the door" to a witness's comments on a defendant's credibility by inquiring whether the defendant may have displayed a "nonchalant" attitude as a coping mechanism to deal with a stressful interrogation. Defendant's cross-examination of Ober, which sought to suggest that defendant's "nonchalant" interaction with Ober might have been due to stress, at most could have "opened the door" to questions on redirect examination about whether defendant appeared to be under stress. The inquiry did not "open the door" to a different topic—that is, whether defendant was being truthful. In other words, defendant's cross-examination of Ober did not "open the door" to credibility testimony because defendant's cross-examination related to defendant's demeanor, not to his credibility.

Again, we highlight the fact that the Oregon Supreme Court has "amplified the importance" of the rule prohibiting comments on credibility, *Salas-Juarez*, 264 Or App at 63, stating, "We have said before, and we will say

it again, but this time with emphasis—*we really mean it* \*\*\*. The assessment of credibility is for the trier of fact[.]" *Milbradt*, 305 Or at 629 (emphasis added). Indeed, the court has even suggested that if counsel attempts to elicit such testimony, a trial judge, "*sua sponte*, should summarily cut off the inquiry before a jury is contaminated by it." *Id.* at 630.

In light of the importance of the principle articulated by the Oregon Supreme Court in *Middleton* and then emphasized by the court again in *Milbradt*, we reject the state's argument and conclude that the state was not permitted to offer, in response to defendant's cross-examination questioning that suggested that defendant's "nonchalant" interaction with Ober may have been due to stress, Ober's testimony that defendant, during the interrogation, "was dishonest[,]" "was untruthful[,]" "was lying about the whole situation[,]" and "was selectively leaving out details that he thought [were] harmful to him." To allow the state to offer that evidence in this case would be to undermine the rule against the admission of comments on credibility. Ober's testimony was inadmissible as a matter of law, and the trial court erred by failing to exclude it.

Because we conclude that the trial court erred by failing to exclude Ober's testimony that defendant "was dishonest[,]" "was untruthful[,]" "was lying about the whole situation[,]" and "was selectively leaving out details that he thought [were] harmful to him[,]" we must determine whether that error was harmless. The state acknowledges that "an error in admitting an improper comment on credibility is usually determined to be prejudicial, such as to warrant a reversal and remand for a new trial." *See State v. Watts*, 259 Or App 560, 314 P3d 991 (2013) (trial court's error in admitting a police officer's comment on defendant's credibility was not harmless, where the focus of the analysis was the jury's determination whether defendant acted with the requisite knowledge). The state argues, however, that the error here was harmless because Ober's testimony "merely stated what already was obvious" and defendant's "own credibility was not directly at issue" due to the fact that defendant did not testify at trial.

We will affirm a judgment of conviction, despite the erroneous admission of evidence, if there is little likelihood that the error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). When evaluating whether evidentiary error is harmless, we do not weigh the evidence or act as factfinder, but instead look at the likely effect of error on the verdict. *Id.* We first determine the issue to which our harmless error analysis applies. *State v. Johnson*, 225 Or App 545, 550, 202 P3d 225 (2009). We then analyze the erroneously admitted evidence in light of other evidence in the record that relates to that issue. *Id.* If the erroneously admitted evidence relates to a central factual issue in the case, rather than to a tangential issue, that evidence is more likely to have affected the jury's determination. *Id.*; *see also State v. Marrington*, 335 Or 555, 566, 73 P3d 911 (2003).

Here, the issue to which our harmlessness analysis applies is the jury's determination that defendant was guilty of murder under ORS 163.115(1). A necessary element of the offense of murder is the requisite intent. As we have stated:

> "An action is done 'intentionally' when 'a person acts with a conscious objective to cause the result or engage in the conduct so described.' ORS 161.085(7). ORS 163.115(1)(a) defines 'murder' to include an intentional act of criminal homicide. 'Criminal homicide,' in turn, is defined by ORS 163.005(1) to include 'intentionally * * * caus[ing] the death of another human being.'"

*State v. Gee*, 224 Or App 635, 639, 198 P3d 950 (2008), *rev den*, 346 Or 157 (2009) (ellipsis and brackets in original). Thus, to find defendant guilty of murder under ORS 163.115(1), the jury must have found that defendant acted intentionally.

As noted, defendant raised the defense of voluntary intoxication. He attempted to show that, although he "'likely committed the acts for which he [was] arrested,'" he remembered little about his actions on the night in question because he had "blanked out," and thus, "he was too drunk to form the intent" to commit murder. The state attempted to prove the opposite—that defendant acted with the requisite intent to commit murder—and challenged defendant's contention that he had "blanked out." For example,

during closing argument, the prosecutor stated that defendant "seems to remember things differently when really pressed. It's not just convenient that he blacks out for the things that he could be held responsible for, what he did to [his girlfriend], what he did to [Graham]. He didn't want to talk about that." She further argued that "defendant cannot have it both ways, ladies and gentlemen. You heard that interview. [Defendant stated,] 'I don't remember anything. I was too drunk, but I remember enough to know I was too drunk.'" She followed up by stating, "You just can't have it both ways." Then, she argued, "[S]o while [defense] [c]ounsel wants you to focus on this wasn't intentional and knowing, it was reckless, all he did, whatever he did was reckless, that's not true. He meant to * * * confront [Graham] like a man, and he did."

Thus, the erroneous admission of evidence in this case relates to a central factual issue that was the lynchpin of the defense—whether defendant had "blanked out" and was too intoxicated to form the intent to commit murder. The jury's determination of that issue hinged on defendant's credibility, and we conclude that the trial court's error was not harmless.[3] Because the improperly admitted evidence— Ober's testimony that defendant, during the interrogation, "was dishonest[,]" "was untruthful[,]" "was lying about the whole situation[,]" and "was selectively leaving out details that he thought [were] harmful to him"—may have "colored the jury's consideration of that issue[,]" *State v. Ferguson*, 247 Or App 747, 755, 271 P3d 150 (2012), we cannot say that there was little likelihood that the trial court's error affected the verdict.[4]

Conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

---

[3] In so concluding, we note that the state cites no precedent from our case law to support its argument that the obviousness of a defendant's credibility is a factor to be considered in a harmlessness analysis or that the trial court's error was harmless because defendant's "own credibility was not directly at issue."

[4] During direct examination, the prosecutor also asked Ober if he had "been lied to on occasion[,]" Ober replied that he had, and defendant appears to assign error to the trial court's failure to sustain his objection to that testimony. Because we agree with defendant that the trial court erred in failing to exclude Ober's other comments, we need not address that issue.