Submitted February 25; convictions on Count 1 and Count 2 reversed and remanded, remanded for resentencing, otherwise affirmed April 7; petition for review denied July 29, 2021 (368 Or 511)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HUNG CAM TAT,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR59837; A171872

484 P3d 1127

Defendant appeals from judgments of conviction for two counts of identity theft (Counts 1 and 2) and one count of second-degree forgery (Count 3). On Counts 1 and 2 the jury returned a nonunanimous verdict, and the state concedes that defendant is entitled to reversal on those counts. Defendant also argues that Count 3 should be reversed because the trial court plainly erred when it did not strike a police officer's testimony that he did not believe what defendant told him during a police interview. *Held*: State concession is accepted and Counts 1 and 2 are reversed. The trial court did not plainly err in failing to strike the officer's testimony, because defendant's theory of the case raises the plausible inference that defendant made a strategic decision to not object to that testimony.

Convictions on Count 1 and Count 2 reversed and remanded; remanded for resentencing; otherwise affirmed.

Jerry B. Hodson, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Neil F. Byl, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Convictions on Count 1 and Count 2 reversed and remanded; remanded for resentencing; otherwise affirmed.

**ORTEGA, P. J.**

Defendant appeals from a judgment of conviction for two counts of identity theft (Counts 1 and 2) and one count of second-degree forgery (Count 3). On appeal, defendant argues that the trial court erred in giving a nonunanimous jury instruction and in accepting nonunanimous verdicts on Counts 1 and 2. The state concedes that defendant is entitled to reversal on Counts 1 and 2 under *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). We agree, accept the concession, and reverse and remand the convictions on Counts 1 and 2. As for the remaining conviction on Count 3 by a unanimous verdict, we conclude that any error in giving the nonunanimous jury instruction was harmless as to that conviction. *State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020).

Defendant also assigns error on appeal to the trial court's failure to strike, *sua sponte*, testimony by Officer Schull that he did not believe what defendant had told him during a police interview. As explained below, we reject that assignment of error and affirm defendant's conviction on Count 3.

The testimony at issue occurred when Schull testified as to what happened when he confronted defendant, who was attempting to cash a check made out to "Michael P. Nguyen" using an identification card also for a Michael P. Nguyen. That testimony is as follows:

"[Officer Schull:] I think I first asked [defendant] what his name was, and he responded, kind of hesitantly, 'Michael.' And I said, 'Okay, Michael, what were you doing there?' And he said that he was trying to cash a check that he had found.

"Q  Did you believe him when he said his name was Michael?

"A  Because of his response, I was—I kind of doubted that he was being forthright.

"Q  When you say 'because of his response,' what was the—what about his response caused you to—

"A  When you ask most people what their name is, their response is immediate. His was a little hesitant and slow in coming.

"* * * * *

"Q   So once you don't believe that his name is Michael—

"A   Right, I told him—

"Q   —what happens next?

"A   Since I could sense the hesitancy, I told him that he needed to be honest with me. And again, he hesitated, and then he asked me if I wanted him to be honest, and I told him I did. And that's when he told me that his real name is Hung Tat.

"* * * * *

"Q   So what does he tell you specifically?

"A   He told me that he was cashing a check that he had found.

"* * * * *

"A   —he told me that it was already made out to Michael Nguyen.

"Q   And what about the identification?

"A   He said that he also found that.

"Q   Did you believe him when he told you that that was the circumstance of what's going on?

"A   No.

"Q   Why didn't you believe him?

"A   Just—the story didn't make sense to me; it didn't ring true.

"Q   What about it doesn't make sense?

"A   That he found an ID and a check made out to the person, and he's lying about his name. I'm like, there's got to be more to this than—it just can't be that clean, if you will; it just didn't make sense to me.

"Q   Did you tell him you didn't believe him?

"A   I did.

"Q   And what did you tell your purpose was in contacting him and trying to figure out what happened? Or did you tell him what you needed him to do for you?

"A   I told him I wanted him just to be honest so that I could document him accurately in my report.

"Q   And did he give you another statement about what was happening? Or what did he tell you in response to the 'I need you to tell me'—

"A   He said, 'Okay, I'll be honest with you.'

"Q   And then what did he come out with?

"A   He said that he found a wallet near Southeast 136th Avenue and Southeast Powell. He said he went through it and removed the check that was already made out, and then he told me that one of his friends left Michael Nguyen's identification at his apartment.

"Q   So what did he decide to do now that he's found this check and he has ID?

"A   He told me that he filled out part of the check with the last name—middle initial and last name and that he signed the back of it."

Defendant did not raise any objections during that testimony.

Defendant also testified on his own behalf at trial and gave another explanation why he was attempting to cash the check. He testified that he knew Michael Nguyen and that Nguyen had given him the check and identification and asked defendant to cash the check. Defendant testified that Nguyen told defendant that, if he cashed the check, he would forgive an amount of money that defendant owed to Nguyen. Defendant denied writing anything on the check, denied telling the clerk that he was Nguyen, and maintained that he did not think he was doing anything wrong. Defendant further testified that he felt "stupid" and "in shock" when the police showed up. When defense counsel asked why he did not tell the truth to the police, defendant responded:

"At first I didn't want to throw, like, Michael under the bus, and, like, rat him out, pretty much, that—that's what happened, so I just kind of made up a story until today, like—that we're here, this far into the case, and Michael's, like nowhere to be found."

On cross-examination, defendant admitted to telling Schull the statements that Schull recounted, with the

exception that defendant denied having told Schull that he altered the name on the front of the check. Defendant admitted that he had signed the back of the check with Nguyen's name when the clerk asked him to endorse the check.

On appeal, defendant argues that the trial court committed plain error when it failed to strike the instances in which Schull testified that he did not believe defendant, because that testimony impermissibly commented on defendant's credibility. *See, e.g.*, *State v. Lowell*, 249 Or App 364, 277 P3d 588, *rev den*, 352 Or 378 (2012) (reversing based on plain error admission of an officer's testimony that, when he interviewed the defendant, he did not think the defendant "was being very honest and upfront" and that when the defendant "sw[ore] to God" that he did not have sex with the complainant, it indicated to the officer, based on his experience, that the defendant was not being truthful).

We reject defendant's argument. Here, the state's theory of the case was that defendant had lied about some things he told Schull, but that he had told the truth when he admitted to altering the name on the check in an attempt to cash it with someone else's identification. Defendant's theory of the case was that everything he said to Schull was a lie, and that he had an innocent explanation for the whole event. Those case theories were presented to the jury in opening statements. Defendant's theory of the case depended upon the jury believing that he was lying when he spoke to Schull, which raises the plausible inference that defendant made a strategic decision to not object to Schull's testimony, as that testimony was consistent with defendant's theory of the case. Given those circumstances, defendant's claim does not qualify as plain error, nor is this a case in which we would exercise our discretion to correct it, even if it qualified as plain error. *See State v. Vage*, 278 Or App 771, 777, 379 P3d 645, *rev den*, 360 Or 697 (2016) ("It is well established that an error does not qualify as plain error if the record contains a competing inference that the party may have had a strategic purpose for not objecting, and that competing inference is plausible." (Internal quotation marks omitted.)). Accordingly, we affirm defendant's conviction on Count 3.

Convictions on Count 1 and Count 2 reversed and remanded; remanded for resentencing; otherwise affirmed.